[Cite as *State v. Martin*, 2016-Ohio-225.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2015AP0010 |
| CLARENCE MARTIN III | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Criminal appeal from the Tuscarawas
                                County Court of Common Pleas, Case No.
                                2014-CR-060126

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         January 20, 2016

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

MICHAEL ERNEST                        KEITH WARSTLER, JR.
125 East High Avenue                  2859 Aaronwood Avenue N.E.
New Philadelphia, OH 44663            Suite 102
                                      Massillon, OH  44646

*Gwin, P.J.*

{¶1}   Appellant, Clarence Martin III ["Martin"] appeals his conviction and sentence after a jury trial in the Tuscarawas County Court of Common Pleas on one count of domestic violence in violation of R.C. 2921.25, a felony of the fourth degree.

*Facts and Procedural History*

{¶2}   The alleged victim, Alicia Suloff did not appear at trial. Prior to the commencement of Martin's jury trial, the trial court overruled Martin's objections to the state presenting Ms. Suloff's 9-1-1 calls[1]. (T. at 10-13).

{¶3}    The state presented Ms. Suloff's two 9-1-1- calls made on June 8, 2014. (T. at 35-38; 42-45; 47-48). During the first call made at 12:19 a.m., Suloff informed the dispatcher that, "My boyfriend beat me up real bad." (T. at 35).  Further, He beat me - - my lips- - I can't even talk." Id. at 36.  Ms. Suloff informed the dispatcher that her boyfriend was Martin and he was still inside the premises. Id. at 37.

{¶4}   During the second call made at 12:27 a.m., Ms. Suloff informs the dispatcher "He beat me up really bad." (T. at 38).

{¶5}   Captain Seth Lurie of the Dover Police Department responded to the premises. Captain Lurie stated that he met a female at the front lower door who was still on the phone with the 9-1-1 dispatcher. (T. at 56). Captain Lurie indicated that he immediately noticed that she was very excited and almost to the point of hyperventilating. (Id.).

{¶6}   Suloff told Captain Lurie that Martin had beat her up. (T. at 57). He observed swelling on her face and lips, as well as a bruise on her arm. (Id). Lurie

---

[1] Martin objected claiming the statements were hearsay and did qualify as an exception pursuant to Evid.R. 803. (T. at 10-13).

believed that Suloff and Martin were cohabitants, and resided together at 315 West Fourth Street. While on scene, Lurie believed that both Suloff and Martin were intoxicated. He observed that Martin had a scratched face and bloody knuckles.

{¶7} Captain Lurie testified that on the night of the call he observed Martin laying face up in a bed. Captain Lurie stated that he believed Martin was intoxicated, based upon the odor of alcohol on both his breath and person, and his eyes appeared to be glassy, and blood shot. Captain Lurie stated that he attempted to speak with Clarence Martin regarding the incident; however, Martin declined.

{¶8} Captain Lurie described the apartment where the incident occurred as being very small. He described seeing Martin's shoes, the victim's clothes, and Martin's clothes. Captain Lurie stated that it was very clear to him that the victim and the perpetrator were living together. Captain Lurie then stated that he determined that Martin was the primary physical aggressor and he was placed under arrest.

{¶9} Martin stated that he and Suloff have been in a relationship for approximately twenty-five years on and off. They were never married and had no children together. Martin testified that on June 8, 2014, Suloff had been staying with him at his apartment on a regular basis. (T. at 109-110). He further testified that he lived there with her on the night on the altercation. (T. at 125; 147). Martin claimed the couple had gone to a local bar where an argument ensued. Martin left the bar and returned home. Martin testified Suloff and her sister arrived about an hour later. Martin claimed that he was in bed when Suloff began arguing with him. She then "jumped on me, she started biting my fingers and I just shoved her away from me and then she jumped on me again." (T. at 113-114). He claimed that he acted in self-defense.

{¶10} Martin requested that the trial court give a proposed jury instruction on the term "cohabit" as contained in R.C. 2919.25. Martin filed a written request for a jury instruction prior to the conclusion of the trial. The trial court overruled Martin's request. (T. at 82-83).

{¶11} The jury returned a verdict of guilty to one count of domestic violence. By Judgment Entry filed February 20, 2015, the trial court sentenced Martin to two years supervised community control sanctions with residential and non-residential sanctions. The trial court reserved a 12-month sentence of imprisonment.

*Assignments of Error*

{¶12} Martin raises three assignments of error,

{¶13} "I. THE DEFENDANT'S CONVICTION FOR ONE COUNT OF DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶14} "II. THE TRIAL COURT ERRED IN PERMITTING THE INTRODUCTION OF THE 911 CALLS.

{¶15} "III. THE TRIAL COURT ERRED IN FAILING TO GIVE THE DEFENDANT'S REQUESTED JURY INSTRUCTION REGARDING COHABITATION."

I.

{¶16} In his first assignment of error, Martin challenges the sufficiency of the evidence; he further contends his conviction is against the manifest weight of the evidence produced by the state at trial.

{¶17} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶18}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶19}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such

a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶20} To find Martin guilty of domestic violence the trier of fact would have to find beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Family or household member" includes "A spouse, a person living as a spouse, or a former spouse of the offender" R.C. 2919.25(F)(1)(a)(i). A "person living as a spouse" includes "a person who is living or has lived with the offender in a common law

marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

{¶21} First, Martin argues the state presented insufficient evidence Suloff is his "family or household member" citing *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997).

{¶22} In *Williams*, the Ohio Supreme Court addressed the definition of "cohabitation" as follows:

> [W]e conclude that the essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium. R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.

*State v. Williams*, 79 Ohio St.3d 459, 465, 1997–Ohio–79, 683 N.E.2d 1126.

{¶23} The Court further defined cohabitation in *State v. McGlothan*, finding where the state demonstrated the defendant was the victim's boyfriend and they had lived together for about a year, the state had no obligation to demonstrate the sharing of familial

or financial responsibilities and consortium to prove cohabitation. 138 Ohio St.3d 146, 149, 2014–Ohio–85, 4 N.E.3d 1021, ¶15.

**{¶24}** We have found, pursuant to R.C. 2919.25(F), if testimony establishes the parties were presently living together at the time of the offense and had cohabitated within the past five years, such unrefuted testimony is sufficient to establish the complaining witness was appellant's family or household member. *State v. Avery*, 5th Dist. Stark No.2004–CA–00010, 2004–Ohio–5226, ¶ 41. *See also, Uhrichsville v. Losey*, 5th Dist. Tuscarawas No. 2005 AP 030028, 2005–Ohio–6564.

**{¶25}** Applying the *McGlothan* analysis to the facts of the instant case, we find sufficient evidence exists Suloff is Martin's family or household member. Martin testified that he and Suloff have been in a relationship for approximately twenty-five years on and off. They were never married and had no children together. Martin testified that on June 8, 2014, Suloff had been staying with him at his apartment on a regular basis. (T. at 109-110). He further testified that he lived there with her on the night on the altercation. (T. at 125; 147). We find sufficient evidence Suloff is a "family or household member" of Martin for purposes of R.C. 2919.25.

**{¶26}** Next, Martin argues that the state failed to prove that he caused any of Suloff's injuries.

**{¶27}** At the outset we note Martin claimed self-defense. Self-defense is a "confession and avoidance" affirmative dense in which appellant admits the elements of the crime but seeks to prove some additional element that absolves him of guilt. *State v. White*, 4th Dist. Ross No. 97 CA 2282, 1998 WL 2282 (Jan. 14, 1998). The affirmative defense of self-defense places the burden of proof on a defendant by a preponderance

of the evidence. *In re Collier*, 5th Dist. Richland No. 01 CA 5, 2001 WL 1011457 (Aug. 30, 2001), *citing State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (4th Dist.1992).

**{¶28}** In the case at bar, the jury was instructed on self-defense. Thus, Martin admitted he caused Suloff's injuries but that he did so in an attempt to protect himself from her attack.

**{¶29}** Nonetheless, in the case at bar the state presented the testimony of Margaret Dessecker. Ms. Dessecker authenticated a recording of a 9-1-1 call made by Suloff. On the 9-1-1 recording, a female voice identifies herself as Alicia Suloff and states that she was just beaten up badly by her boyfriend. When asked her name, the female caller indicates Alicia Suloff. Alicia Suloff indicates that she is at 315 W. Fourth Street in Dover, Ohio. She further indicates that her boyfriend is still at the residence.

**{¶30}** As previously indicated a second 9-1-1 call was also placed. The call was again from Suloff who indicated that "he just scratched my face, everything." The caller goes on to indicate, "he beat me" and "he beat me up really bad." (T. at 48). Suloff identified Martin as her boyfriend and attacker.

**{¶31}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Martin inflicted physical harm on Suloff. We hold, therefore, that the state met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to support Martin's' conviction.

**{¶32}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant,

competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

**{¶33}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No.

99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶34}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶35}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

**{¶36}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541,

*quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Martin of the charge of domestic violence

**{¶37}** Based upon the foregoing and the entire record in this matter, we find Martin's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Martin's testimony. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Martin's guilt.

**{¶38}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of domestic violence beyond a reasonable doubt.

**{¶39}** Martin's first assignment of error is overruled.

## II.

**{¶40}** In his second assignment of error, Martin argues for the first time on appeal that the admission of Suloff's two 9-1-1 calls violated his Sixth Amendment right to confront witnesses. Suloff was unavailable to testify at trial. Martin did not raise an objection to the admission of Suloff's 9-1-1 calls on this basis at trial. (T. at 10-13).

**{¶41}** In criminal cases where an objection is not raised at the trial court level, "plain error" is governed by Crim. R. 52(B), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error ... unless, but for the error, the

outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph two of the syllabus.

**{¶42}** "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 130 S.Ct. 2159, 176 L.Ed.2d 1012(2010)(internal quotation marks and citations omitted).

**{¶43}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Perry, supra*, at 118, 802 N.E.2d at 646.

**The confrontation clause and *Crawford*.**

**{¶44}** In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court concluded that the Sixth Amendment prohibits the introduction of testimonial statements by a non-testifying witness, unless the witness is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. at 54. Applying that definition to the facts in *Crawford,* the court held that

statements by a witness during police questioning at the station house were testimonial and thus could not be admitted. Id.

**{¶45}** In *Davis v. Washington* a consolidated appeal, the Supreme Court confronted two sets of statements made to police. 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). In *Davis*, Michelle McCottry made the statements at issue to a 9-1-1 operator while reporting an ongoing domestic disturbance. Id. at 817–18, 126 S.Ct. 2266. In the companion case, *Hammon v. Indiana*, Amy Hammon completed an affidavit containing the statements at issue after answering questions from a police officer who responded to a reported domestic incident at her home. Id. at 819–20, 126 S.Ct. 2266, 165 L.Ed.2d 224. The court concluded that statements are not testimonial if the primary purpose of the interrogation by law enforcement was to enable police to respond to an ongoing emergency. Statements are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish past events that are potentially relevant to later criminal prosecution. 547 U.S. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224. *See, McCarley v. Kelly*, 801 F.3d 652, 662-663(6th Cir. 2015).

**{¶46}** The Supreme Court further expounded on the primary purpose test in *Michigan v. Bryant,* 562 U.S. 344, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). In that case, the victim of a shooting made statements to the police within five to ten minutes of the shooting, which ultimately resulted in his death. The armed shooter remained at large. In finding the victim's statements to the police to be non-testimonial, the court explained that the existence of an "ongoing emergency" at the time of the encounter is among the most important circumstances informing the interrogation's "primary purpose." Id. at 361.

{¶47} The inquiry, must consider "all of the relevant circumstances." Id., at 369, 131 S.Ct. 1143. And when "the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause." 562 U.S., at 358, 131 S.Ct. 1143. The Court noted, "there may be other circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." Ibid. "[T]he existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry." Id., at 374, 131 S.Ct. 1143. Instead, "whether an ongoing emergency exists is simply one factor ... that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." Id., at 366, 131 S.Ct. 1143 (emphasis in original).

{¶48} In *Ohio v. Clark*,    U.S.   , 135 S.Ct. 2173, 192 L.Ed.2d 306(2015), the Supreme Court observed,

> In the end, the question is whether, in light of all the circumstances, viewed objectively, the "primary purpose" of the conversation was to "creat[e] an out-of-court substitute for trial testimony." [*Michigan v. Bryant* 562 U.S. 344] at 358, 131 S.Ct. 1143. Applying these principles in *Bryant*, we held that the statements made by a dying victim about his assailant were not testimonial because the circumstances objectively indicated that the conversation was primarily aimed at quelling an ongoing emergency, not establishing evidence for the prosecution. Because the relevant statements were made to law enforcement officers, we again declined to decide

whether the same analysis applies to statements made to individuals other than the police. See id., at 357, n. 3, 131 S.Ct. 1143.

Thus, under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." Id., at 359, 131 S.Ct. 1143. *But that does not mean that the Confrontation Clause bars every statement that satisfies the "primary purpose" test. We have recognized that the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding. See Giles v. California,* 554 U.S. 353, 358–359, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008); *Crawford,* 541 U.S., at 56, n. 6, 62, 124 S.Ct. 1354. Thus, the primary purpose test is a necessary, but not always sufficient, condition for the exclusion of out-of-court statements under the Confrontation Clause.

135 S.Ct. 2173, 2180-2181, 192 L.Ed.2d 306 (emphasis added). It sounds to this writer like the Supreme Court is perhaps signaling a return to the historical analysis. Prior to 2004, the Supreme Court of the United States had interpreted the Confrontation Clause to permit the state to use the hearsay statements of a declarant who did not appear at trial if the hearsay fell within "a firmly rooted hearsay exception" or if it otherwise bore "particularized guarantees of trustworthiness." *See, e.g., Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597(1980). Thus, statements made for purposes of medical diagnosis or treatment were admissible notwithstanding the inability of the

accused to cross-examine the declarant. *White v. Illinois*, 502 U.S. 346, 356–357, 112 S.Ct. 736, 116 L.Ed.2d 848(1992), and fn. 8. *See also, State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775.

{¶49} Nevertheless, *Davis* articulated four reasons why McCottry's statements to the 9-1-1 dispatcher were not testimonial evidence. Id. at 827, 126 S.Ct. 2266. First, "McCottry was speaking about events as they were actually happening, rather than describing past events." Id. (*quoting Lilly v. Virginia*, 527 U.S. 116, 137, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion)) (internal quotation marks and alterations omitted). Second, "any reasonable listener would recognize that McCottry ... was facing an ongoing emergency." Id. Third, viewing the 9-1-1 call objectively, the Court concluded that the nature of the questions asked was such that the answers given "were necessary to be able to resolve the present emergency, rather than simply to learn ... what had happened in the past." Id. Finally, the Court addressed the different levels of formality between McCottry's 9-1-1 call and the statements held to be testimonial in *Crawford*. Id. McCottry's frantic telephone call from an unsafe environment stood in stark contrast to Crawford's calm response to questions posed by police in the safety of the station house. Id. Accordingly, McCottry was not bearing witness or testifying because "[n]o 'witness' goes into court to proclaim an emergency and seek help." Id. at 828, 126 S.Ct. 2266; *McCarley v. Kelly*, 801 F.3d at 662-663.

{¶50} The facts of the instant appeal are analogous to the facts in *Davis*. In the case at bar, Suloff's 9-1-1 calls were made while Martin was still in the home. The events had just occurred and she waited only for Martin to leave the room or fall asleep. The nature of the call and the questions asked by the dispatcher clearly related to the ongoing

emergency, whether Suloff needed medical attention, whether the police should be aware that the assailant was still present and who the police should be cautious in approaching.

**{¶51}** We find that the statements Suloff made to the 9-1-1 operator were non-testimonial in nature, and its admission did not violate the Confrontation Clause. [2]

**Hearsay and Evid.R. 803.**

**{¶52}** Having determined that Suloff's statement to the 9-1-1 operator were not testimonial and therefore was not barred by the Confrontation Clause, we must also now decide whether the statement was admissible under our rules of evidence. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶165.

**{¶53}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383(1987).

**{¶54}** "The hearsay rule…is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine-are generally absent for things

---

[2] Under the latest pronouncement as alluded to in *Ohio v. Clark*,   U.S.  , 135 S.Ct. 2173, 192 L.Ed.2d 306(2015), we wonder whether the courts need to engage at all in the "testimonial" vs "non-testimonial" analysis.

said out of court." *Williamson v. United States*, 512 U.S. 594, 598,114 S.Ct. 2431, 2434(1994).

**{¶55}** Evid R 803 Hearsay exceptions; availability of declarant immaterial provides,

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

**1) Present sense impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.

**(2) Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**(3) Then existing, mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

**(4) Statements for purposes of medical diagnosis or treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or

sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶56} An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). A four-part test is applied to determine the admissibility of statements as an excited utterance:

(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,

(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

(c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and

(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

State v. Jones, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶166 (citations omitted).

**{¶57}** In the case at bar, Suloff had just been assaulted, to the extent that "she couldn't even talk." Clearly, this was a startling event. Second, Suloff's statements to the operator were made while she was still under the stress of the startling occurrence. Martin remained in the home during the call. When Captain Lurie arrived at the home, Suloff was still on the phone with the 9-1-1 operator and was excited nearly to the point of hyperventilation. He explained, [she] was talking very fast, trying to spit out more words than what she could actually make sense of." (T. at 56-57).

**{¶58}** The statement need not be made during the course of the startling event. Rather, it is only necessary that the declarant still appeared nervous or distraught and that there was a reasonable basis for continuing to be emotionally upset. In addition, we note that there is no specific amount of time after which a statement can no longer be considered as an excited utterance and not the result of reflective thought. *State v. Taylor,* 66 Ohio St.3d 295, 612 N.E.2d 316 (1993).

**{¶59}** 9-1-1 calls are generally admissible as excited utterances or under the present sense impression exception to the hearsay rule. *Navarrete v. California*, U.S. , 134 S.Ct. 1680, 1689, 188 L.Ed. 680(2014); *State v. Smith*, 80 Ohio St. 3d 89, 107-108, 1997-Ohio-355, 684 N.E.2d 668; *State v. Johnson*, 10th Dist. No. 08AP–652, 2009–Ohio–3383, ¶ 22; *State v. Williams,* 6th Dist. Lucas No. L-11-1084, 2013-Ohio-726, ¶24; *State v. Combs,* 1st Dist. Hamilton No. C-120756, 2013-Ohio-3159, ¶32.

**{¶60}** This series of events in the case at bar clearly establishes an excited utterance exception to the hearsay rule.

**{¶61}** Martin's second assignment of error is overruled.

III.

**{¶62}** In his third assignment of error, Martin contends that the trial court erred in failing to instruct the jury on "cohabit" in accordance with his request.

**{¶63}** The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist.1993). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140(1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

**{¶64}** "Error in refusing to give a special request to charge before argument must be prejudicial in order to support reversal of a judgment rendered against a party complaining of such error." *Smith v. Flesher*, 12 Ohio St.2d 107, 233 N.E.2d 137(1967), syllabus. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati*, 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135(1976). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832 (1991).

**{¶65}** In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827(1999), the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386

U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

{**¶66**} In the case at bar, Martin's instruction requested the trial court define cohabit as meaning the sharing of family or financial responsibilities and consortium. He argues the language requested in this instruction is the same language used in *State v. Williams,* 79 Ohio St.3d 459, 465, 1997–Ohio–79, 683 N.E.2d 1126. (T. at 81-91).

{**¶67**} However, as we indicated in our disposition of Martin's first assignment of error, Martin's definition of "cohabit," is not a correct statement of law. In *State v. McGlothan*, the Ohio Supreme Court found where the state demonstrated the defendant was the victim's boyfriend and they had lived together for about a year, the state had no obligation to demonstrate the sharing of familial or financial responsibilities and consortium to prove cohabitation. 138 Ohio St.3d 146, 149, 2014–Ohio–85, 4 N.E.3d 1021, ¶15.

{**¶68**} Accordingly, Martin's third assignment of error is overruled.

{¶69} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By Gwin, P.J., and

Wise, J., concur;

Hoffman, J., concurs

separately

*Hoffman, J., concurring*

{¶70} I concur in the majority's analysis and disposition of Appellant's first and third assignments of error.

{¶71} I further concur in the majority's general analysis and disposition of Appellant's second assignment of error. I write separately to note, unlike Judge Gwin, I do not find the language in *Ohio v. Clark*, U.S., 135 S.Ct. 2173, 192 L.Ed. 2d. 306 (2015), [indicating the Confrontation Clause does not prohibit "…the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding,"][3] constitutes a signal of a possible return to the historical analysis of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed. 2d. 597 (1980). As pointed out in Justice Scalia's concurring opinion, such language was "nothing but dicta." Id. at 2184.

{¶72} In accord with the foregoing, I do not share my colleagues' "wonder" as to whether courts need to engage in the "testimonial" v. "non-testimonial" analysis.[4]

_____

HON. WILLIAM B. HOFFMAN

_____

[3] The majority in *Clark* references *Giles v. California*, 554 U.S. 353, 358-359 (2008) and *Crawford v. Washington*, 541 U.S. 36 (2004), at 56, n. 6, as support for its assertion. Upon review, both references are to the acceptance of dying declaration testimony. The *Giles* Court noted the only other acknowledged exception was the forfeiture by wrongdoing doctrine, which permitted introduction of statements of a witness who was detained or kept away by the means of procurement of the defendant. *Giles*, supra, at 359.

[4] See, Opinion, footnote 2, at paragraph 51.