[Cite as *State v. Douglas*, 2019-Ohio-2067.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 9-18-19

      v.

JEROME DOUGLAS,                     O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 9-18-20

      v.

JEROME DOUGLAS,                     O P I N I O N

      DEFENDANT-APPELLANT.

Appeals from Marion County Common Pleas Court
Trial Court Nos. 17-CR-527 and 17-CR-528

Judgment Affirmed in Case No. 9-18-19 and
Case No. 9-18-20 Dismissed

Date of Decision:    May 28, 2019

APPEARANCES:

    *Todd A. Workman* for Appellant

    *Kevin P. Collins* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Jerome Douglas ("Douglas"), appeals the June 7, 2018 judgment entries of sentence of the Marion County Court of Common Pleas.

{¶2} On December 27, 2017, the Marion County Grand Jury indicted Douglas in case number 17-CR-0527 on three counts: Count One of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; Count Two of domestic violence in violation of R.C. 2919.25(A), a fourth-degree felony; and Count Three of having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. (Case No. 17-CR-0527, Doc. No. 1). The indictment also included a firearm specification under R.C. 2941.145 as to Count One. (*Id.*). That same day, the Marion County Grand Jury indicted Douglas in case number 17-CR-0528 on Count One of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, and Count Two of having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. (Case No. 17-CR-0528, Doc. No. 1). The indictment also included a firearm specification under R.C. 2941.145 as to Count One. (*Id.*).

{¶3} On January 2, 2018, Douglas appeared for arraignment and entered pleas of not guilty to the indictments. (Case No. 17-CR-0527, Doc. No. 7); (Case No. 17-CR-0528, Doc. No. 7).

**{¶4}** On January 24, 2018, under a superseding indictment, the Marion County Grand Jury indicted Douglas in case number 17-CR-0528 on two additional counts: Count Three of having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony, and Count Four of receiving stolen property in violation of R.C. 2913.51(A), a fourth-degree felony. (Case No. 17-CR-0528, Doc. No. 10). The superseding indictment included the specification included in the original indictment. (*Id.*). On February 5, 2018, Douglas appeared for arraignment and entered pleas of not guilty to the new indictment. (Case No. 17-CR-0528, Doc. No. 21).

**{¶5}** On March 27, 2018, Douglas filed motions in limine in case number 17-CR-0527 requesting that the trial court prohibit the State from introducing at trial evidence of "other acts" and evidence related to a firearm. (Case No. 17-CR-0527, Doc. Nos. 60, 62). Douglas also filed a motion to sever Count Three for purposes of trial and a motion "to require the State to divulge considerations to prosecution witness in exchange for aid/testimony." (Case No. 17-CR-0527, Doc. Nos. 61, 63). The trial court granted Douglas's motions to sever and "to require the State to divulge considerations to prosecution witnesses in exchange for testimony"; and the trial court also preliminarily granted, in part, Douglas's motions in limine. (Case No. 17-CR-0527, Doc. No. 64).

**{¶6}** On March 29-30, 2018, case number 17-CR-0527 proceeded to a jury trial on Counts One and Two and to a bench trial (after Douglas waived his right to a jury trial) on Count Three. (Mar. 29, 2018 Tr., Vol. I, at 1); (Mar. 30, 2018 Tr., Vol. II, at 326); (Case No. 17-CR-0527, Doc. No. 77). On March 30, 2018, the jury found Douglas not guilty of felonious assault as charged in Count One, but guilty of assault as a lesser-included offense, and guilty of Count Two. (Case No. 17-CR-0527, Doc. Nos. 79, 80). Contemporaneous with the jury verdict, the trial court found Douglas guilty of Count Three. (Case No. 17-CR-0527, Doc. No. 81).

**{¶7}** On April 19, 2018, under a second superseding indictment, the Marion County Grand Jury indicted Douglas in case number 17-CR-0528 on four counts: Counts One and Two of felonious assault in violation of R.C. 2903.11(A)(2), second-degree felonies, and Counts Three and Four of having weapons while under disability in violation of R.C. 2923.13(A)(3), third-degree felonies. (Case No. 17-CR-0528, Doc. No. 61).[1] The indictment also included firearm specifications under R.C. 2941.145 as to Counts One and Two. (*Id.*). Douglas appeared for arraignment on April 23, 2018 and entered pleas of not guilty. (Case No. 17-CR-0528, Doc. No. 71).

---

[1] On May 10, 2018, the trial court amended the date of the offense as alleged in Count Four of the second superseding indictment. (Case No. 17-CR-0528, Doc. No. 84).

{¶8} Case number 17-CR-0528 proceeded to a jury trial on May 25-26, 2018. (May 25, 2018 Tr., Vol. I, at 1); (May 26, 2018 Tr., Vol. II, at 320). On May 26, 2018, the jury found Douglas not guilty of felonious assault as charged in Counts One and Two of the second superseding indictment, but guilty of assault as a lesser-included offense under both counts. (Case No. 17-CR-0528, Doc. Nos. 121, 122). The jury also found Douglas guilty of Counts Three and Four. (Case No. 17-CR-0528, Doc. Nos. 123, 124).

{¶9} On June 6, 2018, Douglas filed a motion in both cases requesting that the trial court merge his having-weapons-while-under-disability convictions involved in both cases for purposes of sentencing. (Case No. 17-CR-0527, Doc. No. 86); (Case No. 17-CR-0528, Doc. No. 128). The State filed memoranda in opposition to Douglas's motions. (Case No. 17-CR-0527, Doc. No. 87); (Case No. 17-CR-0528, Doc. No. 129).

{¶10} On June 6, 2018, in case number 17-CR-0527, the trial court sentenced Douglas to a term of 18 months in prison as to Count Two and a term of 24 months in prison as to Count Three, and ordered that Douglas serve the terms concurrently. (Case No. 17-CR-0527, Doc. No. 88). The trial court merged Douglas's (lesser-included) assault conviction relative to Count One and his conviction as to Count Two, and the State elected to pursue Count Two for purposes of sentencing. (*Id.*). That same day, in case number 17-CR-0528, the trial court sentenced Douglas to a

term of 180 days in jail as to Count One and a term of 36 months in prison as to Count Three, and ordered that Douglas serve the terms concurrently. (Case No. 17-CR-0528, Doc. No. 130). The trial court merged Douglas's (lesser-included) assault convictions relative to Counts One and Two and his convictions as to Count Three and Four, and the State elected to pursue Counts One and Three for purposes of sentencing. (*Id.*). The trial court further ordered Douglas to serve the prison terms in case number 17-CR-0527 consecutively to the prison terms in case number 17-CR-0528 for an aggregate sentence of 78 months. (Case No. 17-CR-0527, Doc. No. 88); (Case No. 17-CR-0528, Doc. No. 130). The trial court filed its judgment entries of sentence on June 7, 2018. (*Id.*); (*Id.*).

{¶11} Douglas filed his notices of appeal on June 25, 2018 in both cases, which were consolidated for purposes of appeal. (Case No. 17-CR-0527, Doc. No. 92); (Case No. 17-CR-0528, Doc. No. 134). Because Douglas does not assign any error as to case number 17-CR-0528, assigned as appellate case number 9-18-20, we dismiss that appellate case. App.R. 12 and 16.

{¶12} Douglas raises three assignments of error as to case number 17-CR-0527, assigned appellate case number 9-18-19.

### Assignment of Error No. I

**Defendant-Appellant's conviction of Domestic Violence was against the manifest weight of the evidence.**

-6-

{¶13} In his first assignment of error, Douglas argues that his domestic-violence conviction is against the manifest weight of the evidence. In particular, Douglas contends that the evidence that Douglas and the victim, R.P., were not family or household members outweighs the evidence that Douglas and R.P. were family or household members.

*Standard of Review*

{¶14} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶15} R.C. 2919.25 sets forth the offense of domestic violence and provides, in its relevant part, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). Because it is the only element that Douglas challenges on appeal, we will address only whether the jury clearly lost its way in concluding that R.P. was a family or household member.

{¶16} For purposes of R.C. 2919.25,

(1) "[f]amily or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

* * *

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

R.C. 2919.25(F).

{¶17} In this case, there is no dispute that Douglas was never married to R.P. or that they ever lived together in a common-law marriage. Thus, we must review whether the jury clearly lost its way in concluding that R.P. was a "person living as a spouse" with Douglas. This requires us to weigh the evidence supporting whether

R.P. cohabitated with Douglas or whether R.P. has cohabitated with Douglas within five years prior to the date of the alleged offense. *See State v. Williams*, 79 Ohio St.3d 459, 461 (1997).

{¶18} The Supreme Court of Ohio has defined "'cohabitation' to include two essential elements: (1) the sharing of familial or financial responsibilities and (2) consortium." *State v. Eberly*, 3d Dist. Wyandot No. 16-04-03, 2004-Ohio-3026, ¶ 21, citing *Williams* at 465.

> Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, [or] commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.

*Williams* at 465.

{¶19} Here, Douglas contends that the jury lost its way in concluding that R.P. cohabitated with him because "she was not a resident of that household or a family member of [Douglas's] at the exact time of the alleged offense." (Appellant's Brief at 9). Instead, he contends that the weight of the evidence reflects that R.P. considered the friend's residence—with whom she was staying on the date of the alleged offense—as her residence.

**{¶20}** Douglas's argument that his domestic-violence conviction is against the manifest weight of the evidence because the weight of the evidence shows that R.P. was not a resident of a household with Douglas or a family member of Douglas on the *exact* date of the alleged offense lacks merit. That is, the statute reflects that a person can be considered a "person living as a spouse" if he or she "has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

**{¶21}** Moreover, the evidence that R.P. cohabitated with Douglas within five years prior to the date of the alleged commission of the act in question is weightier than the evidence that she did not. *See State v. Long*, 9th Dist. Summit No. 25249, 2011-Ohio-1050, ¶ 12-13. At trial, R.P. testified that she and Douglas began dating on July 24, 2017. (Mar. 29, 2018 Tr. at 252). R.P. testified that the couple (together) initially moved into Douglas's sister's residence, then moved, together, to a residence located at 760 Creston Avenue in Marion, Ohio. R.P. further testified that she and Douglas were living together "[t]he whole time" from July 24 through November 3, 2017—the date of the offense. (*Id.* at 252, 282). In addition, she testified that she and Douglas "acted" like a married couple by sharing household responsibilities. (*Id.* at 283). *See State v. Carswell*, 114 Oho St.3d 210, 2007-Ohio-3723, ¶ 35 (noting that cohabitation "is a person's determination to share some measure of life's responsibilities with another"). *See also State v. Combs*, 2d Dist.

Montgomery No. 16796, 1998 WL 226375, *3 (May 8, 1998). Despite indicating that she "went and stayed with a friend for a few days" (prior to the November 3 incident), R.P. testified that "[t]he majority of [her] clothes" remained at the residence she shared with Douglas. (*Id.* at 253, 283). Further, R.P. listed "760 Creston Avenue" as her address on the police report that was prepared as to the November 3 incident. (*Id.* at 286); (State's Ex. 28).

**{¶22}** For these reasons, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Douglas's domestic-violence conviction must be reversed and a new trial ordered. Thus, Douglas's first assignment of error is overruled.

## Assignment of Error No. II

**The Trial Court erred in allowing evidence to be presented which violated Defendant-Appellant's rights under the Confrontation Clause of the United States Constitution.**

**{¶23}** In his second assignment of error, Douglas argues that the trial court erred by admitting into evidence an audio recording of a 911 emergency call because the 911 caller did not testify at trial. Specifically, Douglas argues that the admission of the evidence violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

*Standard of Review*

**{¶24}** Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice.  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).  An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).  "However, we review de novo evidentiary rulings that implicate the Confrontation Clause."  *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97.  "De novo review is independent, without deference to the lower court's decision."  *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

*Analysis*

**{¶25}** "The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides, 'In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.'"  *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 34, quoting the Confrontation Clause.  Article I, Section 10 of the Ohio Constitution "provides no greater right of

confrontation than the Sixth Amendment." *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 12.

{¶26} The United States Supreme Court has interpreted the Sixth Amendment right to confrontation

> to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

*Maxwell* at ¶ 34, citing *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354 (2004). The United States Supreme Court

> did not define the word "testimonial' but stated that the core class of statements implicated by the Confrontation Clause includes statements 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Id.*, quoting *Crawford* at 52.

{¶27} "Testimonial statements exist where there is no ongoing emergency and the statements resulted from a police interrogation whose 'primary purpose was to establish or prove past events potentially relevant to later criminal prosecution.'" *State v. Heard*, 12th Dist. Warren No. CA2016-11-095, 2017-Ohio-8796, ¶ 9, quoting *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 17. *See also State v. Stewart*, 3d Dist. Seneca No. 13-08-18, 2009-Ohio-3411, ¶ 84. "In making this 'primary purpose' determination, courts must consider 'all of the relevant

circumstances.'" *Heard* at ¶ 9, quoting *Michigan v. Bryant*, 562 U.S. 344, 369, 131 S.Ct. 1143 (2011).

**{¶28}** "Other factors to be considered in determining the 'primary purpose' of an interrogation include the formality of the situation, the standard rules of hearsay, as well as the statements and actions of both the declarant and the officer questioning the declarant." *Id.* at ¶ 10, quoting *Bryant* at 367. "Thus, the question is whether, in light of all the circumstances, the primary purpose of the conversation was to create 'an out-of-court substitute for trial testimony.'" *Id.*, quoting *Bryant* at 358.

**{¶29}** In this case, Douglas argues that the trial court erred by admitting a 911 emergency call when the caller did not testify at his trial. We will start by addressing whether the admission of the 911 emergency call violated Douglas's Sixth Amendment rights. In reviewing the content of the 911 emergency call, we conclude that such call was not testimonial. *See State v. Smith*, 1st Dist. Hamilton No. C-160836, 2017-Ohio-8558, ¶ 37 ("Because 911 calls seeking police assistance are not testimonial in nature, the Confrontation Clause does not apply."), citing *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 16. Indeed, the 911 emergency call was placed to address an ongoing emergency. *Compare Heard* at ¶ 15 (concluding "that the 9-1-1 call was used to address an ongoing emergency, and as such, was not testimonial in nature"); *State v. Williams*, 6th Dist. Lucas No.

L-11-1084, 2013-Ohio-726, ¶ 14 (concluding "that statements in the 911 call were nontestimonial" because "the primary purpose of the statements by the neighbor in the 911 call was [sic] to seek police assistance to aid [the victim] in an ongoing emergency involving domestic violence").

{¶30} Moreover, the audio recording of the 911 emergency call in this case reveals that the dispatcher was determining the emergency to which law enforcement needed to respond; whether the victim needed medical attention; and whether law enforcement should be aware if the assailant was present. *See Heard* at ¶ 15 (analyzing that the dispatcher was listening to determine what was happening to establish what emergency law enforcement needed to respond); *State v. Martin*, 5th Dist. Tuscarawas No. 2015AP0010, 2016-Ohio-225, ¶ 50 ("The nature of the call and the questions asked by the dispatcher clearly related to the ongoing emergency, whether [the victim] needed medical attention, whether the police should be aware that the assailant was still present and who the police should be cautious in approaching."). Accordingly, we conclude that the admission of the 911 emergency call did not violate Douglas's Sixth Amendment rights. *See State v. Ladson*, 8th Dist. Cuyahoga No. 104642, 2017-Ohio-7715, ¶ 21 ("Ladson has also not demonstrated that the Confrontation Clause was violated by the admission of the recorded 911 call from his girlfriend who did not testify at the trial. The Confrontation Clause is not implicated solely because a witness is not present to

testify."), citing *State v. Herring*, 8th Dist. Cuyahoga No. 104441, 2017-Ohio-743, ¶ 14, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 88.

**{¶31}** Having determined that the 911 emergency call was not barred by the Confrontation Clause, we must now address whether it was admissible under the Ohio Rules of Evidence. *See Martin* at ¶ 52, citing *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 165. As an initial matter, because Douglas failed to object to the admission of the 911 emergency call, he waived all but plain error on appeal. "Crim.R. 52(B) governs plain-error review in criminal cases." *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-14-14, 2015-Ohio-2977, ¶ 63, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68. Under plain-error review, "[w]e may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Id.* at ¶ 63, citing *Williams*, 79 Ohio St.3d at 12.

**{¶32}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless an exception applies. Evid.R. 802. "Evid.R. 803 is one such rule which

permits the admission of certain hearsay statements even though the declarant is available as a witness." *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist.1993). Under Evid.R. 803, the following hearsay statements are admissible: (1) present sense impression; (2) excited utterance; (3) then existing mental, emotional, or physical condition; and (4) statements for the purpose of medical diagnosis or treatment.

{**¶33**} 911 emergency calls are generally admissible as an excited utterance or under the present-sentence-impression exception to the hearsay rule. *See Martin*, 2016-Ohio-225, at ¶ 59 ("9-1-1 calls are generally admissible as excited utterances or under the present sense impression exception to the hearsay rule."), citing *Navarette v. California*, 572 U.S. 393, 400, 134 S.Ct. 1683 (2014), *State v. Smith*, 80 Ohio St.3d 89, 107-108 (1997), *State v. Johnson*, 10th Dist. Franklin No. 08AP-652, 2009-Ohio-3383, ¶ 22, *Williams*, 2013-Ohio-726, at ¶ 24, and *State v. Combs*, 1st Dist. Hamilton No. C-120756, 2013-Ohio-3159, ¶ 32; *Smith*, 2017-Ohio-8558, at ¶ 37. Because it is dispositive, we will address only whether the 911 emergency call at issue in this case was admissible as an excited utterance.

{**¶34**} "An excited utterance is '[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *State v. Thompson-Shabazz*, 2d Dist. Montgomery No. 27155, 2017-Ohio-7434, ¶ 105, quoting Evid.R. 803(2). *See also Jones*, 135 Ohio St.3d

10, 2012-Ohio-5677, at ¶ 166. The Supreme Court of Ohio has set forth the following test for determining whether a statement qualifies as an excited utterance under Evid.R. 803(2):

> (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,
>
> (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
>
> (c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and
>
> (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

*Jones* at ¶ 166. "When evaluating statements under this test, '[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance.'" *State v. Little*, 3d Dist. Allen No. 1-16-29, 2016-Ohio-8398, ¶ 11, quoting *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993). "Rather, 'each case must be decided on its own circumstances.'" *Id.*, quoting *State v. Duncan*, 53 Ohio St.2d 215, 219 (1978). "'The central requirements are that the statement must be made

while the declarant is still under the stress of the event and the statement may not be a result of reflective thought.'" *Id.*, quoting *Taylor* at 303.

**{¶35}** The 911 emergency call at issue in this case satisfies the four elements of an excited utterance that are discussed above. Indeed, the 911 caller was contemporaneously reporting a startling experience—that is, the 911 caller experienced a startling experience when R.P. appeared and collapsed on her porch. According to the 911 caller, R.P., who was crying, banged on her door screaming that a "man was beating her to death" and that he was "trying to kill" her. (State's Ex. 23). When asked if she saw the man, the 911 caller responded that she saw "someone driving around." (*Id.*). The caller also informed the 911 operator that she was too afraid to open the door. Accordingly, in our review of the 911 emergency call, we conclude that it was admissible as an excited utterance. *See Williams*, 2013-Ohio-726, at ¶ 22, 24. Thus, it was not error, let alone plain error, for the trial court to admit the 911 emergency call and Douglas's second assignment of error is overruled.

**Assignment of Error No. III**

**Defendant was denied his Constitutional right to Effective Assistance of Counsel in Case No. 2017 CR 0527**

**{¶36}** In his third assignment of error, Douglas argues that his trial counsel was ineffective. In particular, he argues that his trial counsel was ineffective for:

(1) failing "to follow up on any video or transcript of the Municipal Court proceedings that [Douglas] believes exists" relative to the domestic-violence charge "that he believes he pled guilty to"; (2) failing to investigate whether R.P. "was made certain promises or given certain consideration in exchange for her testimony in this case"; and (3) failing "to object to the confrontation clause issue raised as the second assignment of error * * *." (Appellant's Brief at 12-13).

*Standard of Review*

**{¶37}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's

essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141-42 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶38} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶39} First, Douglas argues that his trial counsel was ineffective for failing to obtain evidence reflecting that he previously pled guilty to the domestic-violence charge; thus, subjecting him to double jeopardy. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense."

> The prohibition against double jeopardy has three distinct aspects. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense

after conviction. And it protects against multiple punishments for the same offense."

*State v. Dixon*, 2d Dist. Montgomery No. 24281, 2011-Ohio-5290, ¶ 14, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072 (1969). "For the purposes of double jeopardy, state and municipal courts are the same entity." *State v. Smiley*, 8th Dist. Cuyahoga No. 03853, 2010-Ohio-4349, ¶ 22, citing *Waller v. Florida*, 397 U.S. 387, 395, 90 S.Ct. 1184 (1970) and *State v. Delfino*, 22 Ohio St.3d 270, 273 (1982).

{¶40} In this case, despite Douglas's trial counsel's admission that he did not attempt to locate a video recording of the arraignment during which Douglas claims that he pled guilty to the domestic-violence charge, Douglas cannot demonstrate that his trial counsel was ineffective. Specifically, Douglas cannot demonstrate that the outcome of the proceedings would have been different—that the domestic-violence charge would have been dismissed—had his trial counsel located a video recording of his arraignment. *See Dixon* at ¶ 19, citing *State v. Barr*, 178 Ohio App.3d 318, 2008-Ohio-4754, ¶ 3 (4th Dist.) (noting that Barr "put[] forward no facts demonstrating that he could reasonably rely on his [municipal-court] plea to terminate any additional criminal liability" and the record did not "contain evidence of a plea agreement or similar implied promise by the prosecution * * *."). When the trial court inquired of Douglas as to what charges to which he thought he

previously entered pleas, Douglas responded, "I entered a plea on an aggravated menacing, a no contest on the possession of marijuana charge; the only two charges I went to video arraignment on." (Mar. 29, 2018 Tr., Vol. I, at 33-34). In other words, Douglas did not testify that he had entered *any* plea to a domestic-violence charge. Further, Douglas's counsel provided the trial court documents from the Marion Municipal Court contending that the domestic-violence charge filed in the Marion Municipal Court for the conduct at issue in this case was "dismissed" *after* Douglas was charged with a felony-level offense for the conduct. (*See id.* at 28-31). In other words, the record does not reflect that jeopardy ever attached under the facts presented. *See, e.g.*, *State v. Larabee*, 69 Ohio St.3d 357, 358-359 (1994)

**{¶41}** Next, Douglas contends that his trial counsel was ineffective for failing to investigate whether R.P. was made any promises or given consideration in exchange for her testimony. In our review of the record, we conclude that Douglas's argument is meritless because the record reflects that R.P. was *not* made any promises or given any consideration in exchange for her testimony. Specifically, on direct-examination, R.P. testified that she was not made any promises or given any consideration in exchange for her testimony. (Mar. 29, 2018 Tr., Vol. I, at 266-267). Further, Douglas's trial counsel inquired of R.P. as to whether she was made any promises or given any consideration in exchange for her testimony to which she responded in the negative. (*Id.* at 279). Moreover,

Douglas's trial counsel filed a pre-trial motion, which was granted by the trial court, to compel the State to divulge any promises or consideration it provided its witnesses in exchange for their testimony. (Case No. 17-CR-0527, Doc. Nos. 63, 64). Accordingly, Douglas has failed to demonstrate that any additional investigation would have had a reasonable probability of success or that the outcome of the proceedings would have been different.

**{¶42}** Finally, based on our resolution of Douglas's second assignment of error, Douglas's trial counsel cannot be ineffective for failing to object to the Confrontation Clause issue relative to the admission of the recording of 911 emergency call.

**{¶43}** For these reasons, Douglas's trial counsel was not ineffective and his third assignment of error is overruled.

**{¶44}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court in case number 9-18-19, and dismiss case number 9-18-20.

*Judgment Affirmed in Case*
*No. 9-18-19 and Case*
*No. 9-18-20 Dismissed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**