[Cite as *State v. Ocanas*, 2023-Ohio-951.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Andrew J. King, J. |
| -vs- | Case No. 2022 CA 00047 |
| JASON A. OCANAS, JR. | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No. 21CR525


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     March 22, 2023


APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

WILLIAM C. HAYES     WILLIAM T. CRAMER
PROSECUTING ATTORNEY     470 Olde Worthington Road
ROBERT N. ABDALLA     Suite 200
ASSISTANT PROSECTOR     Westerville, Ohio 43082
20 South Second Street
Newark, Ohio 43055

*Wise, P. J.*

**{¶1}** Defendant-Appellant Jason A. Ocanas, Jr. appeals his convictions and sentences on one count of Failure to Comply with Order or Signal of Police and one count of Obstructing Official Business entered in the Licking County Court of Common Pleas following a jury trial.

**{¶2}** Appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}** On July 2, 2021, the Licking County Grand Jury returned an indictment against Defendant-Appellant Jason A. Ocanas, Jr. charging him with one count of Failure to Comply with Order or Signal of Police, in violation of R.C. §2921.331(B), a third-degree felony; and one count of Obstructing Official Business, in violation of R.C. §2921.31(A), a fifth-degree felony.

**{¶4}** On April 26, 2022, after two continuances, the matter proceeded to a jury trial

**{¶5}** Prior to the start of the trial, Appellant moved to exclude the State's introduction of a 9-1-1 call made by Allen Scarberry on the basis that introduction of the 9-1-1 call was inadmissible hearsay and violated the Confrontation Clauses of the U.S. and Ohio Constitutions. (T. at 99-101). Although the prosecution had subpoenaed Scarberry to appear and testify, it had been unable to obtain service for the most recently scheduled trial, and Scarberry did not appear. The trial court overruled Appellant's motion to exclude ruling that the 9-1-1 call was not testimonial, and that it qualified as an exception to hearsay as a present-sense impression and excited utterance. (T. at 102-104).

**{¶6}** At trial, the State presented testimony from Officer Jonathan Bell, 9-1-1 Dispatcher Shannon Taylor, Officer Taylor Vogelmeier, Deputy Christopher Hamacher, Sgt. Deputy Tyler Markus, Deputy Brian Stetson, and Deputy Doug Moore.

**{¶7}** Officer Jonathan Bell of the Utica Police Department testified that he was on duty the morning of September 28, 2021. (T. at 122). Officer Bell testified that he was parked, facing eastbound observing traffic on State Route 13 in the Village of Utica when he observed a silver F-150 pick-up truck traveling at fifty miles per hour in a thirty-five mile-per-hour zone. (T. at 126-128). Officer Bell pulled out behind the vehicle and accelerated to catch the vehicle in order to initiate a traffic stop for a speeding violation. *Id.* He testified that he first activated his overhead emergency lights but when the truck failed to stop and began speeding up, he activated his siren. (T. at 132-133). The truck continued southbound on S.R. 13 at speeds in excess of eighty (80) miles-per-hour with Officer Bell in pursuit. (T. at 136). The chase continued for approximately twenty-three miles, winding through rural and residential areas in and around Utica and Granville. The truck reached speeds of over a hundred miles an hour at times. The truck ran stop signs and crossed railroad tracks at high speeds, going airborne on at least one occasion. They passed multiple vehicles during the chase. At one point the truck almost lost control while trying to make a high-speed turn and went off the side of the road, but regained control and continued fleeing. The truck finally came to a stop on a cul-de-sac, dead-end street. (T. at 136-152).

**{¶8}** Officer Bell testified that as the truck neared the end of the cul-de-sac it slowed, both the driver and passenger side doors opened, and while the vehicle was still moving, the driver jumped out of the vehicle and ran east, and a passenger jumped out

of the vehicle and ran west. (T. at 152-153). The vehicle continued to roll until it ran over a curb and crashed into a tree. (T. at 153).

**{¶9}** Officer Bell exited his cruiser and observed an additional occupant in the vehicle, later identified as Allen Scarberry, screaming and trying to climb over the driver's seat in order to exit the vehicle. (T. at 157). Officer Bell ordered Scarberry out of the vehicle at gunpoint. (T. at 158). Officer Bell testified he then assisted other officers in searching on the west side of the vehicle for the front seat passenger. (T. at 159). Officer Bell testified that they apprehended the front seat passenger, whom they identified as Isaiah Gillum, with the assistance of an Ohio State Patrol helicopter pilot. *Id.*

**{¶10}** Officer Bell testified that his cruiser had a dash camera and he was wearing a body camera, and the State played Officer's Bell's dash camera footage linked with audio from Officer Bell's body camera for the jury. (T. at 166; Ex. 4).

**{¶11}** Officer Bell testified he interviewed Appellant following Appellant's arrest, which was also captured on his body camera. (T. at 171). The State played Officer Bell's body camera footage for the jury. (*Id*; Ex. 5). Appellant told Officer Bell that he was not driving the car, and he did not know who was driving the car, it was just "some random-ass dude I just met." (Exhibit 5, time-stamp 1:30:01). After Officer Bell asked Appellant why his DNA was found on the steering wheel, Appellant first stated he had never seen the vehicle before, but then stated that he was messing with the steering wheel and radio. (T. at 176; Ex. 5). When Officer Bell asked Appellant why he was jumping out of the driver's side door, Appellant responded that he was trying to stop the vehicle and put it in park. (Ex. 5, time-stamp 1 :30:01).

{¶12} 9-1-1 Dispatcher Shannon Taylor testified regarding the call she received between midnight and 2:00 a.m. on September 28, 2021, which the prosecution played for the jury. (T. at 190; Exhibit 6). In the 9-1-1 call, a frantic individual can be heard first talking to Taylor and then talking to other individuals:

Guys, let me out now … I'm gonna fuck you guys up…

… Please, let me out

Guys, fucking please, let me out …

Guys, let me out … I gotta

You guys are gonna fucking get us killed, please!

… Jay, please bro, stop the fucking truck before I start breaking windows. Bro I'm not trying to die, nigga. Fucking stop it now. Dude I can't fucking do this I have a fucking anxiety anxiety attack … I'm not doing this

No! No! No! No! Stop the fucking truck!"

…

Guys are you still on the phone I was in the … I didn't want to get hurt but these mother fuckers was just running from cops for a hot minute ... I'm not ... (Officer Bell shouting orders) It's not me, Sir ... I've been trying ... (Officer Bell shouting orders) I've been on the phone trying to get out of the car. I've been trying to get out, this is not me man ... I've been trying to call you guys.

(Ex. 6).

{¶13} Taylor Vogelmeier, a tactical flight officer with the Ohio State Highway Patrol next testified for the State. Officer Vogelmeier testified that he was on duty the early morning of September 28, 2021, and assisted in locating the two individuals that fled from

the truck by using thermal imaging from his helicopter and directing law enforcement officers to their location. (T. at 197-198). Footage from Officer Vogelmeier's thermal recording camera was played for the jury. (T. at 198, Ex. 7). Officer Vogelmeier testified that he directed law enforcement to one individual to the east of the truck who was sitting on the back porch of a nearby house smoking a cigarette, and one individual to the west that was lying face down. (T. at 202). Officer Vogelmeier saw no other individuals in the area besides law enforcement officers. *Id.*

{¶14} Deputy Christopher Hamacher of the Licking County Sheriff's Office also testified regarding September 28, 2022. Deputy Hamacher testified that he assisted Officer Bell and Deputy Brown in arresting Isaiah Gillum, and that he saw no other persons in the area. (T. at 209). Deputy Brown testified that when they found Gillum, he was laying prone under a tree. (T. at 210).

{¶15} Sergeant Deputy Tyler Markus of the Licking County Sheriff's Office was on duty the morning of September 28, and testified regarding his participation in the search for the two subjects that fled the truck, during which time he did not see any other individuals besides the suspects and did not participate in making any arrests. (T. at 213-215).

{¶16} Deputy Brian Stetson of the Licking County Sheriff's Office was on duty September 28, 2022, and testified regarding his participation in the search for the suspects. Deputy Stetson testified that he and Deputy Moore arrested Appellant after being directed to Appellant's location by OSP Aviation. (T. at 218). Deputy Stetson testified he first saw Appellant sitting on the porch smoking a cigarette. (T. at 219).

{¶17} Deputy Doug Moore of the Licking County Sheriff's Office testified regarding his participation in the search for the suspects. Deputy Moore arrested Appellant. (T. at 223). Upon encountering Appellant, Deputy Moore observed that "he had stuff all over his pants, like burrs or whatever all over his pants." (T. at 224). The State played Deputy Moore's body camera footage for the jury. (T. at 225; Ex. 8). In the footage, the following exchange between Deputy Moore and Appellant was captured:

Moore: Where's your shoes?

Appellant: I honestly have no idea where they went.

Moore: Were you the driver?

Appellant: No.

Moore: What were you, the passenger?

Appellant: Uh, back seat I believe, er passenger? No back seat."

Moore: Who's the driver, what's his name?

Appellant: No idea.

Moore: You don't know what his name is?

Appellant: No.

Moore: You're in a car with somebody you don't know what their name is?

Appellant: Yeah.

Moore: You know anybody else in the car, know what their name is?

Appellant: No, just met them.

Moore: Just met them tonight, huh?

Appellant: Yeah, I was walking and they ...

(Ex. 8, time stamp 1:08:27)

**{¶18}** Following Deputy Moore's testimony, the State rested. (T. at 234). The State informed the trial court that Scarberry had failed to show for trial, so they would be unable to call him as a witness. (T. at 233). Appellant then moved for dismissal pursuant to Criminal Rule 29, which the trial court overruled. (T. at 239).

**{¶19}** Appellant did not present any evidence and rested. *Id.*

**{¶20}** After hearing all the evidence, the jury returned a verdict of guilty as to all charges. (Judgment Entry, April 27, 2022).

**{¶21}** The trial court deferred sentencing pending receipt of a presentence investigation report.

**{¶22}** On June 22, 2022, the trial court sentenced Appellant to a prison term of twenty-four (24) months on Count One and six (6) months on Count Two, to be served consecutively, for a total aggregate prison term of thirty (30) months. The trial court further imposed a one (1) to three (3) year term of post-release control. (Judgment Entry, June 22, 2022).

**{¶23}** Appellant now appeals, raising the following assignments of error:

**ASSIGNMENTS OF ERROR**

**{¶24}** "I. APPELLANT'S RIGHT TO CONFRONT THE WITNESSES AGAINST HIM UNDER THE FEDERAL AND STATE CONSTITUTIONS WAS VIOLATED BY THE ADMISSION OF HEARSAY IN A 911 CALL FROM A WITNESS WHO DID NOT TESTIFY

**{¶25}** "II. THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING A HEARSAY STATEMENT IN A 911 CALL.

**{¶26}** "III. THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT APPELLANT'S CONVICTION FOR FAILURE TO COMPLY."

**I., II.**

**{¶27}** In his first and second Assignments of Error, Appellant argues the trial court erred in allowing the admission of a 9-1-1 call into evidence. We disagree.

**{¶28}** Appellant argues that the admission of hearsay evidence violated the Rules of Evidence and the Confrontation Clause of the Sixth Amendment to the United States Constitution.

**{¶29}** We will not reverse a trial court's ruling on evidentiary issues absent an abuse of discretion and proof of material prejudice. *See State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 116.

*9-1-1 Call*

**{¶30}** Statements a caller makes during a 9-1-1 call are often found to be non-testimonial and are admissible if the statements satisfy a hearsay exception. *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 61 (8th Dist.) This is because a 9-1-1 caller is typically "speaking about events as they [are] actually happening" and "[a]lthough one might call 911 to provide a narrative report of a crime absent any imminent danger," 911 callers are usually facing ongoing emergencies. (Emphasis deleted.) *Davis v. Washington*, 547 U.S. at 827, 126 S.Ct. 2266, 165 L.Ed.2d 224 ("A 911 call * * * and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance."). Under such circumstances, the 9-1-1 caller

is not testifying, the 9-1-1 caller is not acting as a witness and the statements of the 9-1-1 caller are not testimonial in nature. *Id.* at 827-828, 126 S.Ct. 2266.

*Confrontation Clause*

**{¶31}** The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Only testimonial hearsay implicates the Confrontation Clause. A statement is "testimonial" if it is made for " 'a primary purpose of creating an out-of-court substitute for trial testimony.' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 87, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011); *see also State v. Knox*, 8th Dist. Cuyahoga No. 107414, 2019-Ohio-1246, 2019 WL 1501549, ¶ 67 ("[T]he core class of statements implicated by the Confrontation Clause" includes those " 'made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial.' "), quoting *Crawford v. Washington*, 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**{¶32}** The admission of a testimonial, out-of-court statement by a declarant who does not testify at trial violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford* at 53-54, 68, 124 S.Ct. 1354. We review evidentiary rulings that implicate the Confrontation Clause *de novo. State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97.

**{¶33}** 911 calls are generally nontestimonial and are admissible if the statements contained therein satisfy a hearsay exception.

**{¶34}** As the United States Supreme Court observed in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), in the case of 911 calls, the declarants are generally "speaking about events as they [are] actually happening" and that "[a]lthough one might call 911 to provide a narrative report of a crime absent any imminent danger," 911 callers are typically facing ongoing emergencies. (Emphasis deleted.) *Id.* at 827, 126 S.Ct. 2266. Under such circumstances, the 911 caller is not testifying; the 911 caller is not acting as a witness, and the statements of a 911 caller are not testimonial in nature. *Id.* at 827-828, 126 S.Ct. 2266. *See also State v. Jacinto*, 8th Dist. No. 108944, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 61.

**{¶35}** Here, the statements made by Scarborough to Appellant, while they were in the car and recorded by the 9-1-1 dispatcher, were nontestimonial, and therefore no Sixth Amendment violation occurred. Appellant therefor cannot establish a confrontation-clause violation.

*Hearsay*

**{¶36}** Even when the Confrontation Clause does not operate to prohibit the admission of a hearsay statement, the statement may nonetheless be inadmissible under the Rules of Evidence. *See State v. Nevins*, 2d Dist. Montgomery No. 21379, 2007-Ohio-1511, ¶ 36, ("[T]estimony may be admissible under the Confrontation Clause yet inadmissible under the rules of evidence, and vice versa * * *."). Thus, having addressed that the 9-1-1 emergency call was not barred by the Confrontation Clause, we now turn

to address whether it was admissible under the Rules of Evidence, wherein we will apply an abuse of discretion standard of review.

**{¶37}** Hearsay is defined to mean "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C).

**{¶38}** Under the Rules of Evidence, hearsay is generally inadmissible unless an exception to the hearsay rule applies. Evid.R. 802.

**{¶39}** "Evid.R. 803 is one such rule which permits the admission of certain hearsay statements even though the declarant is available as a witness." *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist.1993).

**{¶40}** Evid.R. 803 is titled <u>Hearsay Exceptions; Availability of Declarant Immaterial</u>. Evid.R. 803 provides in its pertinent parts:

> The following are not excluded by the hearsay rule, *even though* the declarant is available as a witness:
>
> **(1) Present Sense Impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.
>
> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
>
> \*\*\*
>
> (Emphasis added.) Evid.R. 803(2).

**{¶41}** 9-1-1 calls are generally admissible as excited utterances or under the present sense impression exception to the hearsay rule." *State v. Martin*, 5th Dist. Tusc. No. 2015AP0010, 2016-Ohio-225, ¶ 59 (5th Dist.). *Navarette v. California*, 134 S.Ct. 1683, 1689, 188 L.Ed.2d 680 (2014); *State v. Smith*, 80 Ohio St.3d 89, 107–108, 684 N.E.2d 668 (1997); *State v. Johnson,* 10th Dist. No. 08AP–652, 2009-Ohio-3383, 2009 WL 2003398, ¶ 22; *State v. Williams*, 6th Dist., 2013-Ohio-726, 987 N.E.2d 322, ¶ 24; *State v. Combs*, 1st Dist. Hamilton No. C–120756, 2013-Ohio-3159, 2013 WL 3816613, ¶ 32

**{¶42}** Regarding a present sense impression under Evid.R. 803(1), "[t]he key to the statement's trustworthiness is the spontaneity of the statement; it must be either contemporaneous with the event or be made immediately thereafter." *State v. Essa*, 194 Ohio App.3d 208, 2011-Ohio-2513, 955 N.E.2d 429 (8th Dist.), ¶ 126. " 'The principle underlying this hearsay exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness.' " *State v. Dixon,* 152 Ohio App.3d 760, 2003-Ohio-2550, 790 N.E.2d 349, ¶ 12 (3d Dist.), quoting *Cox v. Oliver Machinery Co.*, 41 Ohio App.3d 28, 35, 534 N.E.2d 855 (12th Dist.1987). Accordingly, "Ohio courts have routinely held that 911 calls are admissible as present sense impressions." *Ohio v. Scott*, 1st Dist. Hamilton Nos. C-200385 and C-200403, 2021-Ohio-3427, ¶ 17. *See also State v. Smith*, 2017-Ohio-8558, 99 N.E.3d 1230, ¶ 37 (1st Dist.) ("911 calls are usually admissible under the excited utterance or the present sense impression exception to the hearsay rule").

**{¶43}** For a statement to be admissible as an excited utterance, four prerequisites must be satisfied: (1) there must be a startling event that produces a nervous excitement

in the declarant, (2) the statement must have been made while the declarant was still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. *See, e.g., State v. Renode*, 8th Dist. Cuyahoga No. 109171, 2020-Ohio-5430, 2020 WL 6948175, ¶ 27, citing *State v. Taylor*, 66 Ohio St.3d 295, 300-301, 612 N.E.2d 316 (1993), and *Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, at ¶ 166.

**{¶44}** "There is no per se amount of time after which a statement can no longer be considered to be an excited utterance." *Taylor* at 303, 612 N.E.2d 316. "The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be the result of reflective thought." (Emphasis deleted.) *Id.*

**{¶45}** In this case, the prosecutor played a recording of the 9-1-1 call placed by Allen Scarberry. On the recording, Scarberry can be heard screaming and begging the driver of the vehicle to stop the truck. At one point he can be heard addressing the driver of the truck as "Jay". He can also be heard screaming that he is "not trying to die", that he is having an "anxiety attack" and that he "didn't want to get hurt."

**{¶46}** We find each of the requirements as to a present sense impression or an excited utterance were met as to Scarberry's statements as heard on the 9-1-1 call and were admissible as exceptions to the hearsay rule.

**{¶47}** Accordingly, the trial court did not err or abuse its discretion in admitting the 9-1-1 call. Scarberry's statements on the call were non-testimonial and were admissible under the excited utterance exception to the hearsay rule.

**{¶48}** Based on the foregoing, we find Appellant's first and second Assignments of Error not well-taken and hereby overrule same.

**III.**

**{¶49}** In his third Assignment of Error, Appellant argues his conviction for Failure to Comply was against the weight of the evidence.

**{¶50}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶51}** Appellant herein is challenging his conviction on one count of Failure to Comply with Order or Signal of Police Officer, in violation of R.C. §2921.331(B), which provides, in relevant part:

> (B) No person shall operate a motor vehicle so as willfully to elude or
> flee a police officer after receiving a visible or audible signal from a police
> officer to bring the person's motor vehicle to a stop.

**{¶52}** The sole issue is whether Appellant was the non-compliant driver of the silver Ford F-150 pick-up truck.

**{¶53}** After reviewing the evidence, we find that Appellant's conviction was not against the manifest weight of the evidence. The jury heard testimony from Officer Bell, as well as all of the other officers involved in the search, and the 9-1-1 call which support a finding that Appellant was the driver of the silver F-150 pick-up truck in this case. The jury also watched the dashcam footage from Officer Bell's police cruiser and his body cam footage showing his conversation with Appellant. The jury also had Officer Moore's body cam footage which showed the conversation between the him and Appellant when he arrested Appellant. Additionally, the jury had the video footage from the helicopter showing the search for Appellant and the other passenger.

**{¶54}** Here, the jury clearly believed the evidence presented in support of Appellant being the driver of the vehicle. "The jury was in the best position to judge the credibility of the [witnesses], and we will not disturb its credibility determination." *State v. Bostick,* 12th Dist. Warren Nos. CA2022-03-013 and Warren Nos. CA2022-04-015, 2022 WL 17245135, 2022-Ohio-4228, ¶ 17. Moreover, "[i]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011 WL 6382534, 2011-Ohio-6529, ¶ 17.

**{¶55}** In light of the consistent testimony of Officer Bell and the 9-1-1 call which identified Appellant as the driver of the silver F-150 pick-up truck, as well as the dashcam and body cam footage from the officers supporting that testimony, we find that the evidence presented at trial does not weigh heavily in favor of acquittal. The evidence

provided allowed the jury to conclude beyond a reasonable doubt that Appellant was the driver of the vehicle in this case.

**{¶56}** "The jury did not clearly lose its way and create a manifest miscarriage of justice in finding Appellant guilty of failing to comply with an order or signal of a police officer." *Bostick* at ¶ 18.

**{¶57}** Accordingly, we find Appellant's conviction is not against the manifest weight of the evidence.

**{¶58}** Appellant's third Assignment of Error is overruled.

**{¶59}** The judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.


By: Wise, P. J.

Baldwin, J., and

King, J., concur.


JWW/kw 0320