[Cite as *State v. Sanabria*, 2025-Ohio-5747.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 25 CAA 06 0041 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Delaware County Court of Common Pleas, Case No. 24 CRI 09 0513 |
| ERIKKA SANABRIA, | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: December 22, 2025 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; Robert G. Montgomery, Judges

**APPEARANCES:** MELISSA A. SCHIFFEL and KATHERYN L. MUNGER, for Plaintiff-Appellee; CATHERINE MEEHAN, for Defendant-Appellant.

OPINION

*Montgomery, J.*

{¶1} Defendant-Appellant, Erikka Sanabria ("Appellant") appeals from the jury verdict finding her guilty of one count of theft and sentencing her to two years of community control. For the reasons below, we AFFIRM.

**STATEMENT OF THE CASE**

{¶2} On September 12, 2024, Appellant was indicted with one count of Theft in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fifth degree. Appellant was represented by counsel and entered a plea of not guilty. After multiple continuances, on May 21, 2025, the matter proceeded to trial. The jury returned a guilty verdict against

Appellant for one count of theft and found that the value of the property taken totaled more than $1,000.00. On May 22, 2025, Appellant was sentenced to two years of community control. This appeal followed.

## STATEMENT OF FACTS

{¶3} The State's case in chief consisted of two witnesses, Ryan Boerger – Meijer's loss prevention officer, and Ashley Flack - a police officer with the Westerville Police Department as well as several exhibits including various clips of Meijer surveillance video, Officer Flack's body camera footage, a photograph, and the rear cruiser video. The record reveals the following facts.

{¶4} On or about September 2, 2024, Appellant was at a Meijer store located in Westerville, Ohio (Delaware County) and began what appeared to be shopping. At some point, an employee working out on the floor became suspicious due to the large number of items Appellant was selecting and putting into her cart. The employee alerted Meijer's loss prevention officer, Ryan Boerger, which prompted him to watch and review the surveillance camera. Mr. Boerger observed Appellant continue through the entire store, section by section, selecting items and putting the items in her cart. Appellant eventually had a cart so full of merchandise that Mr. Boerger could not see through it – a fact Mr. Boerger testified was not typical for the average Meijer shopper.

{¶5} Appellant eventually took her cart towards the front of the store, placed some items into reusable bags, cut through an empty checkout lane with no cashier, and then stopped at the service desk to purchase lottery tickets. Thereafter, Appellant appeared to look at and/or scratch off the tickets while proceeding to the exit, passed all

points of sale without paying for any items, and exited the first set of doors into the lobby. Once she passed through the first set of doors, Mr. Boerger stopped her.

{¶6} Appellant quickly began moving items around in the cart to retrieve her purse and told Mr. Boerger she had a receipt, but never actually showed any receipt to him. Mr. Boerger took Appellant to the loss prevention office and called the Westerville police. While waiting, he and another employee scanned the items to generate a report and get an accurate total cost of everything, which was $1,180.18. Mr. Boerger also took a photograph of all scanned items.[1] Throughout the time Appellant was in the loss prevention office waiting, Appellant did not provide the receipt she claimed she had. On cross examination, Mr. Boerger stated that Appellant looked like she was just shopping. However, Mr. Boerger reaffirmed that because Appellant had an unusually large number of items in the cart, it raised his suspicion.

{¶7} Officer Ashley Flack with the Westerville Police Department responded to the loss prevention call from Meijer. Upon arrival, Officer Flack went to the loss prevention office, observed Appellant there, and asked Appellant her name to which she replied, "Channing Bordsky." Appellant also provided a date of birth, later determined to be false. Officer Flack stated she did not independently corroborate loss prevention's version, such as watching the video, but noted that in her experience, they only called the police once they had their facts straight. Appellant did not make any admissions to Officer Flack. Appellant did not mention or offer any receipt to Officer Flack, but she did offer multiple times to pay for the items.

---

[1] Mr. Boerger's testimony, including the scanning process, is corroborated by Meijer's surveillance video clips admitted into evidence.

**{¶8}** Regarding the name Appellant gave to Officer Flack, she testified as follows:

Q: What did you first do when you arrived into the office?

A: Asked her what her name was.

Q: And at that time, did she give you her name?

A: She gave me a name.

Q: And what name did she give?

A: Channing -- probably pronounced differently - Brodsky.

Q: Okay. And did you further investigate that name?

A: Yes.

Q: Why?

A: How we do it is we basically -- She stated that she didn't have an ID on her.

Q: Okay.

A: So, I asked her for her name and date of birth. I asked her to spell her name. And normally I'll ask if your license is out of Ohio or a different state. She said her license was out of Florida. So when I go on to our communications to run her name through LEADS, it did not come back with an actual result.

Q: And you mentioned a date of birth. Did she give you a date of birth at that time?

A: She did.

Q: How did you -- Well, did you ever ID her?

A: Yes. From the, from the cards and everything once Officer Platt started searching her belongings, her purse that's sitting right next to her, we were able to confirm that she was indeed Erikka.

Q: Okay. And how, how did you confirm that?

A: Dispatch was able to add her information to our call. I returned to my car and was able to pull up her BMV image.

Q: Okay. When you pulled up her BMV image, what did you do with that?

A: Just verified that we were indeed speaking to Erikka.

*Trial Transcript,* pp. 232-235.

**{¶9}** Officer Flack took Appellant out of the store and placed her in the backseat of the police cruiser. The rear cruiser video reveals that Appellant repeatedly said to herself, "I'm so f----d." *Trial Transcript*, p. 240. Officer Flack also later discovered Appellant had approximately $540.00 cash stuffed in her bra. Although Appellant offered to pay for the items, Officer Flack testified it was too late because Appellant passed all points of sale without paying.

## ASSIGNMENTS OF ERROR

**{¶10}** "I. <u>FIRST ASSIGNMENT OF ERROR</u>**:** THE TRIAL COURT ERRED WHEN IT ALLOWED THE ADMISSION OF OTHER ACTS EVIDENCE WHEN THE STATE FAILED TO COMPLY WITH EVID. R. 404(B)(2)."

**{¶11}** "II. <u>SECOND ASSIGNMENT OF ERROR</u>**:** THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT WEIGHED THE PROBATIVE VALUE VS. THE DANGER OF UNFAIR PREJUDICE OF THE STATE'S EVIDENCE OF APPELLANT PROVIDING A FALSE NAME IN AN ARBITRARY AND UNREASONABLE MANNER."

**{¶12}** "III. <u>THIRD ASSIGNMENT OF ERROR</u>: THE COURT ERRED WHEN IT PROVIDED A CURATIVE INSTRUCTION AS THE EVIDENCE SHOULD NEVER HAVE BEEN ADMITTED IN THE FIRST PLACE."

**{¶13}** "IV. <u>FOURTH ASSIGNMENT OF ERROR</u>: APPELLANT'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**{¶14}** "V. <u>FIFTH ASSIGNMENT OF ERROR</u>: APPELLANT'S CONVICTION IS AGAINST THE WEIGHT OF THE EVIDENCE."

**{¶15}** "VI. <u>SIXTH ASSIGNMENT OF ERROR</u>: THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S R. 29(C) MOTION FOR JUDGMENT OF ACQUITTAL AFTER VERDICT AND CRIM. R. 33 MOTION FOR NEW TRIAL."

**{¶16}** "VII. <u>SEVENTH ASSIGNMENT OF ERROR</u>: THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRONEOUS RULINGS DEPRIVED APPELLANT OF A FAIR TRIAL."

## ARGUMENT

### Evid.R. 404(B) and Other Acts Evidence and Use of a False Name

**{¶17}** In the first assignment of error, Appellant argues the trial court improperly admitted Evid.R. 404(B) evidence of other bad acts and that the State failed to comply with the notice requirements set forth in Evid.R. 404(B)(2). We disagree. Appellate courts review challenges to the admissibility of evidence for an abuse of discretion, provided an objection is made at trial. *State v. Smith*, 2019-Ohio-3257, ¶ 15 (1st Dist.); *State v. Ocanas*, 2023-Ohio-951, ¶ 29 (5th Dist.); *In re S.H.W.*, 2016-Ohio-841, ¶ 17 (2d Dist.).

**{¶18}** A trial court has broad discretion in determining the admissibility of evidence, so long as such discretion is exercised in line with the rules of procedure and the rules of evidence. *Rigby v. Lake Cty*., 58 Ohio St.3d 269, 271 (1991); *State v. Echols,* 2023-Ohio-2206, ¶28 (1st Dist.), affirmed by *State v. Echols,* 2024-Ohio-5088 ("The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice."); *see also State v. Issa*, 2001-Ohio-1290 (2001). An

abuse of discretion implies more than an error in judgment; it is arbitrary, capricious, or unreasonable. *State v. Coriell*, 2023-Ohio-4113, ¶¶ 30-31 (5th Dist.).

**{¶19}** Evid.R. 404 is titled "Character evidence not admissible to prove conduct; Exceptions; Other crimes, Wrongs, or Acts" and provides in part:

(A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:

* * *

(B) Other Crimes, Wrongs or Acts.

(1) *Prohibited Uses*. Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses; Notice*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*See also State v. Hartley*, 2025-Ohio-3048, ¶ 20 (5th Dist.).

**{¶20}** The rule "categorically prohibits" evidence of a defendant's other crimes, wrongs, or acts when the only value of the evidence is to demonstrate the defendant acted in accordance with her character. *State v. Smith*, 2020-Ohio-4441, ¶ 36. However, said evidence may be admissible for legitimate purposes, such as to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B)(2). "The key is that the evidence must prove something other

than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22; *State v. Tibbetts*, 2021-Ohio-132, ¶¶ 34-35; *Echols*, ¶ 28. The proponent of such evidence shall do the following:

(a)     Provide reasonable notice of any such evidence the party intends to introduce at trial so that an opposing party may have a fair opportunity to meet it;

(b)     Articulate in the notice the permitted purpose for which the proponent intends to offer the evidence, and the reasoning that supports the purpose; and

(c)     Do so in writing in advance of trial, or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Evid.R. 404(B)(2)(a)-(c).

{¶21}  Recently, in *Hartley*, this Court reaffirmed the Ohio Supreme Court's three-part analysis when determining the admissibility of other acts evidence. *State v. Hartley*, 2025-Ohio-3048, ¶ 23 (5th Dist.), citing *State v. Williams*, 2012-Ohio-5695, ¶ 20. The first step is to consider whether the evidence is even relevant under Evid.R. 401. If relevant, the second step is to consider whether the evidence is presented to prove the character of the accused to show activity in conformity therewith, or whether it is presented for a legitimate purpose, such as those stated in Ohio Evid.R. 404(B). *Id.* The third and final step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *Id*.

**{¶22}** By the rule's own terms, the challenged evidence must be evidence of a crime, wrong or act to fall within the purview of the rule; it must not be evidence that goes directly to the charged crime itself. As stated in *State v. Thomas*,

> First, it must be evidence of a "crime, wrong, or act." *Id.* Second, "it must not be evidence that goes directly to the charged crime itself-rather, it must be evidence of an *'other* crime, wrong or act.' " (Citations omitted). Additionally, evidence of other crimes may be presented when they are so blended or connected with the one on trial that proof of one incidentally involves the other, or explains the circumstances thereof, or tends logically to prove any element of the crime charged. *State v. Roe,* 41 Ohio St.3d 18, 23-24 (1989); *see also State v. Smith,* 49 Ohio St.3d 137, 139 (1990); *State v. Handshoe,* 2023-Ohio-3205, ¶ 22 (3d Dist.) ("Evid.R. 404(B) applies to the admission of 'other acts' extrinsic to the charged offense and not those acts intrinsic to the offense [being tried] because the latter are outside the purview of Evid.R. 404(B)").
>
> *State v. Thomas,* 2025-Ohio-1321, ¶ 18 (3rd Dist.).

**{¶23}** Thus, relevant other acts evidence may be admitted when said acts are part of the "res gestae" of the charged crime. *Hartley*, supra, ¶ 25, citing *State v. David*, 2021-Ohio-4004, ¶ 16 (1st Dist.). There are instances when the other acts evidence is so inextricably intertwined with the charged conduct that its admission is necessary to complete the picture of what occurred. *Hartley*, supra; *State v. Wilkinson*, 64 Ohio St.2d 308, 318 (1980). In *State v. Hill*, this Court stated as follows:

It is not necessary to exclude evidence of other conduct when "the 'other acts' form part of the immediate background of the * * * crime charged in the indictment." *State v. Curry*, 43 Ohio St.2d 66, 73, 330 N.E.2d 720 (1975). * * * To be admissible * * * the 'other acts' testimony must concern events which are inextricably related to the alleged criminal act." *Curry*, at 73. "This situation is sometimes described as evidence of "res gestae [.]" *Gianelli & Synder*, Evidence (2 Ed.2001) 240, Section 404.20.

* * *

Accordingly, acts intrinsic to the alleged crime do not fall under Evid.R. 404(B)'s limitation on admissible evidence.

When other acts are "inextricably intertwined" with that offense, those acts are said to be intrinsic to the alleged crime. In other words, acts that are "inextricably intertwined" aid understanding by "complet[ing] the story of the crime on trial." *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008). "Evidence of other crimes is admissible when evidence of the other crime is so blended or connected with the crime on trial as the proof of one crime incidentally involves the other crime, or explains the circumstances, or tends logically to prove any element of the crime charged." *State v. Long*, 64 Ohio App.3d 615, 617, 582 N.E.2d 626 (9th Dist.1989).

*State v. Hill*, 2019 Ohio App. Lexis 3524, *18-21 (5th Dist.).

**{¶24}** Based on these well-settled principles, we find that Appellant giving a false name is not a prior or "other" crime, wrong, or bad act as contemplated by the rule. Here, the challenged behavior happened during the theft, was part and parcel of the relevant

facts, and was direct evidence or "res gestae" of the crime charged. *Id.*, at *20 (concluding "that the evidence relates to the counts charged in the indictment and the circumstances surrounding appellant's prosecution, which leaves this evidence outside the purview of Evid.R. 404(B)."). The State provided the evidence to show the totality of circumstances that occurred and not to show that Appellant had propensity to commit the crime. *State v. Lazzerini,* 2021-Ohio-1998, ¶ 42 (5th Dist.) (holding that the "evidence Appellant complains of was not evidence of other acts offered to show he acted in conformity therewith * * * but instead was direct evidence of the acts charged in the instant case."); *Roe,* supra.

**{¶25}** Even assuming the evidence is within the purview of the rule, it was properly admitted for <u>multiple</u> legitimate purposes under Evid.R. 404(B)(2). Such legitimate purposes include (1) to show Appellant's identity – that it was Erikka Sanabria who committed the act of theft and not "Channing Brodsky;" (2) to demonstrate Appellant's mens rea as well as knowledge, and that she intended to deprive Meijer of its property; (3) to show absence of mistake, meaning that Appellant purposely exerted control over property belonging to Meijer; and (4) to demonstrate Appellant's consciousness of guilt after the crime. The evidence was simply not offered to show Appellant's propensity to commit crimes, no matter how strenuously Appellant argues to the contrary.

**{¶26}** Again, assuming the evidence falls within the rule's purview, the State satisfied its obligation to provide notice to the defense. The record demonstrates that the State's pretrial brief listed Officer Flack and Ryan Boerger as potential witnesses and potential exhibits included Meijer surveillance video, the cruiser cam video, the body cam video, the Meijer loss prevention report and the merchandise report/list. Moreover, before

the jury was empaneled, defense counsel made an "oral motion in limine" on the record seeking to exclude this very evidence and made arguments to the Court that it was improper and highly prejudicial to Appellant. *Trial Transcript*, pp. 7-12. The Court discussed the issue with defense counsel at length and ultimately determined it would allow the evidence. Thus, the trial court did not act arbitrarily, unconscionably, or unreasonably in allowing the evidence. Appellant's first assignment of error is overruled.

**{¶27}** Appellant's second assignment of error argues that the probative value of the false name evidence was clearly outweighed by the risk of undue prejudice to Appellant. Appellant argues that evidence of Appellant's conduct after her arrest was essentially used to demonstrate her propensity to commit the theft. We disagree.

**{¶28}** "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). However, almost all evidence is prejudicial to a defendant. Thus, the rules of evidence do not attempt to exclude all prejudicial evidence, <u>only</u> evidence that is *unfairly* prejudicial. *State v. Crotts,* 2004-Ohio-6550, ¶ 23. "Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403." *Id.,* ¶ 24. Unfairly prejudicial evidence is most often that which appeals to the jury's emotion rather than a jury's intellect. *Id.*

**{¶29}** Here, for the reasons fully set forth above in assignment of error number one, we find that the false name evidence was part and parcel of the crime charged and was necessary for the State to prove what transpired on the day in question. The evidence was also presented for legitimate purposes as evidence of consciousness of

guilt, mens rea, absence of mistake, and intent to commit a theft.  It was highly probative and was not unduly prejudicial.  Appellant's second assignment of error is overruled.

**{¶30}** In the third assignment of error, Appellant claims the court erred when it provided a curative instruction because the evidence should never have been admitted in the first instance.  Again, for the reasons set forth in the first and second assignments of error, the evidence was properly admitted.  No curative instruction was necessary.  Any error in giving the instruction was harmless.  "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).  Appellant's third assignment of error is overruled.

### Sufficiency and Manifest Weight of the Evidence Challenges

**{¶31}** The fourth and fifth assignments of error argue that there was insufficient evidence to find Appellant guilty and the verdict was against the manifest weight of the evidence.  The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4; *State v. Worley,* 2021-Ohio-2207, ¶57.  A sufficiency-of-the-evidence challenge asks whether the evidence is "legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 2011-Ohio-4215, ¶ 219.

**{¶32}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Williams*, 2003-Ohio-4396, ¶ 83. When a court of appeals reverses a judgment of a trial court as against the weight

of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387; *Williams,* ¶ 60. The reviewing court must determine whether the jury clearly "lost its way and created such a manifest miscarriage of justice" that the conviction cannot stand, and a new trial must be ordered. *Id.,* quoting *State v. Group*, 2002-Ohio-7247, ¶ 77 (citations omitted). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *State v. Dotson*, 2017-Ohio-5565, ¶ 1 (5th Dist.).

{¶33} In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 21; *In re Z.C.*, 2023-Ohio-4703, ¶ 14. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). In determining whether a witness is credible, the trier of fact is in the best position to consider inconsistencies in testimony, as well as the witnesses' demeanor and manner of testifying. *Dotson*, ¶ 50. Moreover, a defendant is not entitled to a reversal on manifest weight grounds simply because there was inconsistent evidence presented at trial. *Id.*; *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.). If the evidence is susceptible to one or more interpretations, a reviewing court must interpret it in a manner consistent with the verdict. *Dotson*, ¶ 49.

**{¶34}** "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. McCrary,* 2011-Ohio-3161, ¶ 11 (10th Dist.), citing *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.) (noting that "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.") (other citation omitted); *State v. Winbush,* 2017-Ohio-696, ¶ 58 (2d Dist.). As a result, a determination that a judgment is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra,* 2022-Ohio-1421, ¶ 50 (2d Dist.).

**{¶35}** Appellant was convicted of theft. Pursuant to R.C. 2913.02(A), "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services" without the consent of the owner or person authorized to give consent. A person acts purposely "when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). A person acts knowingly, regardless of purpose, "when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶36}** The State presented Mr. Boerger's and Officer Flack's testimony as well as the relevant clips of surveillance video footage that clearly show Appellant gathering items all over the store and filling her cart with over $1000 worth of merchandise. Appellant then left the store with the cart full of items without paying and after passing all points of sale. Based on this evidence, a rational juror could logically conclude that Appellant purposely deprived Meijer of its property and intended to take the items from Meijer

without paying for anything. While Appellant argues that she mistakenly failed to pay, the jury discharged its duty and clearly disbelieved Appellant's theory.

{¶37} Appellant makes several additional arguments in her brief to discredit the witness testimony, including that Appellant did not run out of the exit, that she was distracted and looking at her lottery tickets, and that the store employees targeted Appellant based on bias. The jury rejected these arguments. Indeed, it is equally plausible the jury determined that Appellant did nothing to draw attention to herself or pretended to be preoccupied with lottery tickets with purpose, namely so that she would not be caught exiting the store with her cart full of merchandise. Essentially, Appellant was caught red handed on surveillance video. In the back of the cruiser, Appellant stated "I'm so f----d" more than once.

{¶38} A defendant is not entitled to a reversal on manifest weight grounds simply because there was inconsistent evidence presented at trial. Moreover, if the evidence is susceptible to one or more interpretations, a reviewing court must interpret it in a manner consistent with the verdict. *Dotson*, ¶ 49. The jury found that Appellant exerted control over $1000 worth of merchandise and passed all points of sale without paying for any items. These facts alone are sufficient to uphold the conviction for theft, *even without* the false name evidence. Because the jury did not clearly "lose its way" in finding that the State proved the requisite elements of theft and found the witnesses for the prosecution more credible than Appellant's theories, Appellant's fourth and fifth assignments of error are overruled.

### Criminal Rules 29 and 33

**{¶39}** In the sixth assignment of error, Appellant argues the trial court improperly overruled her Crim.R. 29(C) motion for acquittal after verdict and improperly refused to grant her Crim.R. 33 motion for a new trial. The trial court denied both motions after the jury verdict finding it no longer had jurisdiction. Even assuming the trial court had jurisdiction to consider said motions, both are wholly without merit.

Crim.R. 29 provides as follows:

(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses.

* * *

(C) Motion after verdict or discharge of jury. If a jury returns a verdict of guilty * * * a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal. * * *

**{¶40}** We apply the same standard of review to Crim.R. 29 motions that we use in reviewing sufficiency of the evidence as a challenge to a guilty verdict. 2009-Ohio-5128, ¶ 6 (10th Dist.); *State v. Tenace*, 2006-Ohio-2417, ¶ 37. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). The relevant inquiry

on review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime [proven] beyond a reasonable doubt." *State v. Mullins*, 2016-Ohio-8347, ¶ 13 (10th Dist.), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A reversal or acquittal based on insufficient evidence has the same effect as a not-guilty verdict because such a determination "means that no rational factfinder could have voted to convict the defendant." *Mullins*, ¶ 13, citing *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

{¶41} Here, viewing the evidence in a light most favorable to the State, a rational trier of fact could have easily found the essential elements of theft proven beyond a reasonable doubt. The testimony and video evidence clearly demonstrate Appellant gathering a significant number of items, walk through a checkout aisle without a cashier present, purchase lottery tickets, and ultimately exit the store without paying for any cart items. Additionally, upon being detained, Appellant gave a false name and false date of birth. The jury was within its purview to disbelieve Appellant's claim that she made a mistake and "meant to" pay for the merchandise. As set forth above, Appellant's conviction is not against the manifest weight of the evidence. Thus, the trial court did not err in denying Appellant's Motion under Crim.R. 29.

{¶42} Regarding Appellant's motion for a new trial pursuant to Crim.R. 33(A)(1), we similarly reject Appellant's argument. The Rule states:

(A)    A new trial may be granted on motion of the defendant for any of the

following causes affecting materially the defendant's substantial rights:

(1)     Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial * * *.

**{¶43}** Appellant continually repeats her claim that the trial court abused its discretion when it allowed Evid.R. 404(B) evidence without proper notice and determined that the probative value of the evidence outweighed the prejudice to Appellant.  For the reasons previously set forth, the trial court did not abuse its discretion in allowing the evidence.  There was no irregularity in the proceedings that materially affected the defendant's substantial rights.  To the contrary, the record reveals a full and fair opportunity for both sides to present their respective facts, theories, and arguments to the court and jury. Appellant's six assignment of error is overruled.

**{¶44}** In the seventh and final assignment of error, Appellant claims the cumulative effect of the trial court's erroneous rulings deprived appellant of a fair trial. "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *State v. DeMarco,* 31 Ohio St.3d 191 (1987); *State v. Brown*, 2003-Ohio-5059.  Although Ohio recognizes the cumulative error doctrine, it simply does not apply where the defendant "cannot point to multiple instances of harmless error." *State v. Roman-Navarre*, 2025-Ohio-3156, ¶ 132 (5th Dist.), citing *State v. Mammone*, 2014-Ohio-1942, ¶ 148, quoting *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

**{¶45}** Further, this Court has stated:

[A] cumulative-error analysis aggregates only actual errors to determine their cumulative effect. Individual rulings frequently will have an adverse effect on a party, but unless that party can demonstrate that the ruling was an error, reversal would not be warranted. Impact alone, not traceable to error, cannot form the basis for reversal. The same principles apply to a cumulative-error analysis, and we therefore hold that a cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.

*State v. Remillard,* 2019-Ohio-3545, ¶ 84, citing *State v. Allen,* 2010-Ohio-4644, ¶ 257.

**{¶46}** Appellant's argument hinges solely on the trial court's admission of the "false name" evidence. Appellant states, "the trial court's rulings paved the way for improper, irrelevant, and highly prejudicial evidence to be presented to the jury. While the trial court recognized the prejudice by admitting [giving a false name] evidence, it attempted to cure the issue with a jury instruction that did nothing more than to call additional attention to the prejudice." *Appellant's Brief*, p. 17. As set forth in this Opinion, the trial court did not commit any error in admitting said evidence. Because this case does not involve multiple instances of error, the cumulative error doctrine is inapplicable. *Roman-Navarre*, ¶ 134. Appellant's seventh assignment of error is overruled.

## CONCLUSION

**{¶47}** For the reasons fully set forth above, Appellant's first through seventh assignments of error are overruled in their entirety. The judgment of the Delaware County Court of Common Pleas is affirmed.

**{¶48}** Costs to Appellant.

By: Montgomery, J.

Baldwin, P.J. and

King, J. concur.